The opinion of the court was delivered by
Breaux, J.
The Third National Bank of New York advanced a large amount to the St. Louis, New Orleans and Ocean Canal and Transportation Co.; the payment of which the defendant undertook to secure by executing a chattel mortgage in New York of property in Louisiana.
The Citizens Bank, another creditor of the defendant, having obtained a judgment, seized the property and had it sold.
The proceeds are claimed by the Third National Bank of New York.
This bank alleged, in its opposition claiming the proceeds, that the chattel mortgage was in effect a pledge, and that it was in possession of the property as pledgee.
At a time subsequent to the date of the “ chattel mortgage ” the defendant executed another obligation for a larger amount, in which the property described in the deed of mortgage is referred to as having been pledged to the opponent bank of New York.
The Citizens Bank denied that opponent had a pledge; because it contends the opponent had no possession of the property pledged.
The issue involves the possession of the pledgee vel non.
The District Court dismissed the opposition.
The opponent appeals.
The correspondence between the defendant and the opponent discloses that the defendant acknowledged that he was the agent of the “Third National Bank,” and expressed himself as quite willing to *999 hold the property as agent for the bank; to lease it and pay that bank the rental, less the costs and expenses of operation.
In an interview with opponent’s counsel it is proved that counsel said to the defendant, Janin, that there were three ways of securing their client.
One of them was to sell the property.
Another was to continue in possession as the agent and attorney of the bank, their client.
The last was that delivery of the property be made to them.
The defendant declined to accede to the first and last propositions, giving as reason that he was unwilling to sell; that delivery of the property to others would occasion expense he was anxious to avoid, but he consented to continue in the possession of the property as agent for the bank; to lease it and account to the pledgee, the bank, for the proceeds.
Counsel for the opponent informed him that it would be satisfactory to them and to their client.
He at one time sought to lease the property from the pledgee, at a rental of one thousand five hundred dollars per year.
The bank was willing to accept the proposal, but required that the contract of lease be submitted to their counsel for their examination and approval.
The defendant did not comply with opponent’s desire in this respect.
Shortly after he made a lease of the boat for five hundred dollars per month, but conveyed no knowledge of this lease to the bank or its counsel.
Two days prior to the expiration of the second month of this lease he inclosed a draft to his creditor, the Third National Bank, for one hundred and twenty-five dollars, and advised its president that it was for one month’s rent of the dredgeboat.
The draft was returned, and he was informed that the bank would not accept a lease without the approval of counsel.
The defendant wrote to the president of the bank that he had received the draft on his return from the interior of the State, where, he stated, the property was; that he intended to use the amount of the draft in paying a portion of the boat’s liabilities; that he would ■devote the most of his time daring the next few months in efforts to pay all claims on the property, provide a new crane, new chains *1000 and other articles needed, and pay the bank one hundred and twenty-five dollars per month.
The first lease by defendant to O. S. Burdette, of the property, was transferred by the latter to J. B. Camors, who, with defendant’s consent, became lessee. The latter informed the counsel of the Third National Bank that he was renting the property from the defendant at a rental of five hundred dollars per month.
On December 22, 1892, i. e. immediately after having received the information-, counsel notified the lessee, Camors, that the property leased to him by the defendant Janin belonged to the Third National Bank; that it had been transferred to that bank as security for a large sum of money due by Janin.
They also informed him that the debtor, Janin, was left in possession of the boat as the agent of the bank, and that his possession was precarious, and subject to be terminated at will; that they had informed Janin that his custody of the property as the agent of the bank was terminated, and that the bank ratified for its own account the lease made to him, and directed him to retain possession under the lease as the agent of their client, and pay the rental to them.
The lessee informed the defendant, his lessor, of the notice received from local counsel.
He thereafter consented to hold for the Third National Bank, as its lessee.
The property was seized at the instance of the Citizens Bank on the 6th day of January, 1893, and subsequently sold.
Counsel for intervenor called on the president of that bank, and complained of the seizure and informed him that their client was in possession.
The attorney of the Citizens Bank advised the release of the seizure.
The president persisted in maintaining it. The attorney testifies that he was informed by the president of conflicting claims to the property, and that as he was adverse to the seizure of steamboats by banks when there were claims by third persons, he stated that the bank would release the seizure; that at the time he was not advised of the claim of the Third National Bank. He states it as his impression that the president of the Citizens Bank received his information that the boat was subject to seizure from the defendant; that *1001 his communications were not very free in reference to the transactions between him and the defendant.
It is admitted that the Kinta, the property claimed to have been pledged, was a steam shovel, movable property, and not a sea vessel; that it was not registered or licensed under any laws of the United States or of the State, being nothing but a steam spade or floating steam shovel.
Common Law Chattel Mortgage.
The argument for opponent, the New York bank, is that the contract was one of pledge, intended to secure the creditor’s claim by pledging property in Louisiana under the form of a common law chattel mortgage.
That the chattel mortgage did not, as it purports on its face, divest the owner of his property, but that, in so far as it related to form, it contained all the elements of a pledge, and as such was enforceable in Louisiana.
This was not controverted by plaintiff’s counsel, who contended that the pledgee never was in possession, and that, therefore, there was no pledge which could be enforced as such.
The effect to be given to acts such as the one relied upon in this case as being in effect a pledge, has received this Court’s interpretation in several decisions.
It has never been held that they effect a translation of the property ; it not being the intention of the parties to sell the property, though the word “ sell ” or its equivalent is used in the common law deed of mortgage.
The act is given effect as a mortgage if it contains the essentials of a mortgage or of a pledge if it contains as to form the requirements of an act of pledge.
This view has received the sanction of this Court in several decisions. Miller vs. Shotwell, 38 An. 891.
POSSESSION.
The privilege of pledge is subject to unbending conditions.
There must be an actual delivery, in order that those who transact with the pledgor may know that the property is held in pledge.
There should not be any good reason to consider the thing pledged in the possession of the pledgor for his account and benefit.
*1002 The possession of the pledgee should be real and effective at all times; it must be apparent and well known.
As between the parties, consent is sufficient to transfer property; as to third persons, there must be delivery.
If there has been no delivery, the innocent buyer from the pledgor of the thing can not be evicted.
He could not be aware of the adverse right in the property not delivered, and in regard to which there is no contract, save that known only to the pledgor and ths pledgee.
Were it otherwise, it would frequently be impossible to buy with any safety that the title to the movable is complete and legal. “It is evident that if the pledge of movables could, without delivery, have effect in regard to third persons it would be the source of great fraud and deception. When the debtor is obliged to surrender possession he can not deceive third parties dealing with him by keeping possession of the pledged articles as part of his estate, and getting credit thereby.” Dalloz Nant. 313.
Possession is essential to complete a real right to movables.
The pledge withdraws the thing from the hands of the debtor and sets it aside as property subject to a pledgee’s privilege.
Possession is the most sure foundation and the most striking index of the privilege. Oasaregis says, preference is accorded to a pledgee on the thing pledged, because he has it in his hands.
This possession should not be equivocal, and so placed as to deceive other creditors and lead them to believe that the debtor always continued the possessor.
With reference to the pledgor’s act, possible without affecting the possession and the pledgee’s right, Troplong illustrates by saying, that merchandise in the creditor’s warehouse may need the care of the debtor; that he may give his attention to it without destroying the right of pledge.
Third persons can not be deceived by this case, for the creditor remains in possession of the property in his own storehouse.
The principle is laid down by the French authorities that “whenever the assistance of the debtor is necessary to the accomplishment of the object of the pledge, it ought to be permitted, provided always that it does not disturb the possession of the creditor in any respect.” Casey vs. Cavaroc, 96 U. S. 484.
The learned judge in the case just cited says: “ That it seems to *1003 be evident that in the French law, at least, the text of which, in this regard, is the same as that of Louisiana, a delivery by the owner of securities by way of pledges, followed by a return thereof to him, for the purpose of enabling him to collect them and apply the money to his own use, or substituting others in their stead, and with general liberty of substitution, and to appear as the owner and possessor thereof in his dealing with others (the title of the securities not being transferred do the creditors), is not such a delivery of possession as is necessary to establish the privilege due to a pledge as to third persons. It would be contrary to the very letter of the law to allow such a transaction to have that effect. It would not be mere evidence of fraud, which might be rebutted by counter evidence; but it would be contrary to the rule of law adopted to prevent fraud. In other words, as to third persons, it would not be a pledge at all within the meaning and requirements of the law. We think that the decisions in Louisiana lead to the same conclusion.”
In support of the proposition of opponent that the right of pledge is complete where the debtor himself is in the precarious possession of the thing pledged, as trustee ad hoc, we are referred by opponent’s counsel to the cases of Conger vs. City, 32 An. 1252; Weems vs. Delta Moss Co., 33 An. 973; Jacquet vs. Creditors, 38 An. 863.
In the first case, the pledge was statutory; moreover, the dictum had no reference to the conclusion reached, for it was decided that the pledge had been destroyed by a sale of the property.
In the second case cited, the property had been placed in the possession of an agent.
The court said in that ease: ‘ ‘ Under the provisions of Art. 3162, which allows the possession of the pledgee to be vested in a third person, agreed upon by the parties, we find that these transactions show such a possession in the pledge as the law requires, even under a vigorous construction of its provisions.”
In the last case cited, the property was placed in the hands of an agent, who held the k6y of the building in which it was.
This agent testified that he exiercised control over the property for about ten months, and took care of it and cleaned the machinery. He was paid for his services as keeper. With his permission, and that of the pledgee, the pledgors used the machinery at times.
The keeper at all times, however, retained possession.'
*1004 Only in the last case cited there was any reference made to the use of the property by the pledgor.
The occasional use of the property pledged, with the consent of the pledgee, did not dispossess the keeper, who remained in charge, as required (said the court) by Art. 3162 of the Civil Code.
The possesssion of a creditor is not inconsistent with the open well-known co-operation of the pledgor, when the latter’s co-operation is not incompatible with the idea of the possession of the creditor.
In the case at bar, while the defendant Janin was in possession no third person suspected that he was operating the boat for any one’s account save his own.
When it is considered (that the boat was at some distance, in charge of the owner and pledgor, who informed no one of his agency; that it had been leased by him and the rents collected for his account, it becomes manifest that the pledgee, during the pledgor’s active operations, was not in possession.
THE ILLEGAL AND IMPROPER UNDERSTANDING CHARGED.
An understanding between the plaintiff and the defendant, such as charged by the opponent, would operate as a bar to considering the plaintiff as a third person.
If the third person conspired with a pledgor to obtain an advantage, he would not be in the attitude of a person not interested and without notice.
The only testimony introduced was that of plaintiff’s attorney, who gave it as a mere impression that the president of the Citizens Bank obtained his information from the defendant.
A similar question to that presented in the case at bar, at this point, received consideration in the case of Rawlins et al. vs. Sheriff et al., 45 An. 67.
This Court said, in that case, “If they had legal claims — they (the creditors) were entitled to proceed, and were not prejudiced by the mere circumstance that their information came from the debtor.”
In the case at bar, it is not positively shown by whom the creditor was notified of the possibility of making a valid seizure of the property of the pledgor.
The burden of proof to establish collusion between the common *1005 debtor and the president of the plaintiff bank rested with the opponent.
“The party having the burden is the party who, if no proof is offered, will be defeated in the suit.”
The fact that the plaintiff’s president did not testify did not have the effect of shifting the burden of proof, and give rise to a presump-- ■ tion of knowledge on his part of the obligation of the defendant to the opponent.
The plaintiff was a third person, against whom it is not shown that it had knowledge of any pledge on the part of the defendant to the opponent prior to the last lessee’s possession, Oamors.
As against Janin the bank had an absolute right to seize the property in his possession or in the possession of his lessee.
AS SUBRÓGEE OE LAST LESSEE IS THE THIRD NATIONAL BANK A PLEDGEE?
This brings us to the consideration of the last point involved in the case.
The opponent, the New York bank, having recognized the lease to Oamors and having through him obtained the possession of the boat it held when the seizure was levied, the important question is presented as to whether it was legally possible for this creditor to obtain possession and control, through Oamors, the lessee of Janin, of property that had been pledged to it.
The principle is well settled that the title of the lessee is in fact the title of the lessor.
He comes in by virtue of the lease, he holds by virtue of the lease, and upon it he relies to maintain and justify his possession. He acknowledges thereby the title of the lessor, and he can not invoke the title of another and change the nature of his possession.
He is not permitted to deny that the lessor had a title to possession at the time that he, the lessee, came into possession. 3 Am. and Eng. Ency. 188.
The law regarding pledge is plain.
“It is essential to the contract, of pledge that the creditor be put in possession of the thing given to him in pledge, and consequently that actual delivery of it be made to him, unless he has possession of it already by some other right.”
*1006 Pledge is not made perfect by the consent of the parties. It requires absolute possession.
As to creditors the pledge was not complete when Janin was in possession.
The property was subject to seizure. The lessee, at the end of the lease, owed possession to his lessor, and not to his creditors. They had no claims upon him. Let us assume that the Third National Bank called on Oamors to deliver the property and that he refused to surrender possession.
The Third National never having been in possession, Camors had the absolute right to decline to surrender his possession.
Not having the authority to compel delivery, they were equally without authority to obtain possession by virtue of a contract with the lessee.
Delivery of possession to the pledgee must be given by the pledgor, and not by his lessee.
The obligation to deliver devolved upon the debtor, and not upon the one who held under a lease.
As between Janin and the National Bank, the pledge and its fruits were due by the former to the latter.
This indebtedness could become secured as intended by the creditor only after asserting the right contradictorily with the debtor.
Third persons hav e rights distinct from those of the pledgor.
As to them, there must be actual delivery and no control retained of the property by the owner for his personal account.
In order that there may be no question about the pledge, there must be absolute compliance in this respect.
La loi, says Baudrié-Laeantinerie, se montre pleine de solicitude pour les interets des tiers auxquels ce privilege pourra prejudicier• Vol. S, p. 599.
The property must be placed and remain in the possession of the creditor, or of a third person agreed upon by the parties.
It was not in possession of the creditor, nor in possession of a third person agreed upon by the parties; it was therefore subject to seizure and sale to pay and satisfy other indebtedness of the debtor.
Judgment affirmed at appellants’ costs.